UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RALPH HALL,

                              Plaintiff,

                    -v-

ANTHONY ANNUCCI, *et al.*,

                              Defendants.

No. 19-CV-5521 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Ralph Hall
Stormville, NY
*Pro se Plaintiff*

Brendan M. Horan, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Ralph Hall ("Plaintiff") brings the instant Action, pursuant to 42 U.S.C.

§ 1983, against Anthony Annucci ("Annucci"), Acting Commissioner of the New York State

Department of Corrections and Community Supervision ("DOCCS"); Thomas Griffin

("Griffin"), Superintendent of Green Haven Correctional Facility ("Green Haven"); Dr. Robert

Bentivegna ("Bentivegna"), "Medical Supervisor" at Green Haven; Dr. Kyoung Kim ("Kim"),

"Medical Provider" at Green Haven; and Green Haven Nurses Aileen McCarthy ("McCarthy"),

Donna Heitz ("Heitz"), Deborah MacDonald ("MacDonald"), and Nicole Walsh ("Walsh")

(collectively, "Defendants").  (Third Am. Compl. ("TAC") 6–7 (Dkt. No. 81).)  Before the Court

is Defendants' Motion To Dismiss, (*see* Not. of Mot. (Dkt. No. 103)), and Plaintiff's putative

Motion for an order to show cause, (*see* Not. of Mot. (Dkt. No. 125)).  For the reasons discussed

below, Defendants' Motion and Plaintiff's Motion are both denied.

I.  Background

A.  Factual Background

1.  Allegations in Plaintiff's Third Amended Complaint

The pertinent facts, drawn from Plaintiff's Third Amended Complaint ("TAC") and taken as true for purposes of resolving the Motion To Dismiss, are as follows.  From around September 26, 2017 through October 30, 2017, Plaintiff was confined at the Green Haven infirmary to recuperate and recover from an "invasive surgery" and replacement of his left hip to complete "bi-lateral hip replacement(s)."  (TAC 8.)[1]  Plaintiff's wound and dressing were not properly cleansed or sanitized, and, as a result, he contracted methicillin-resistant *Staphylococcus aureus*, commonly known as "MRSA."  (*See id.*)  *See also* Ctrs. for Disease Control & Prevention ("CDC"), *Methicillin-resistant* Staphylococcus aureus *(MRSA): General Information*, https://www.cdc.gov/mrsa/community/index.html.[2]  Plaintiff was released from hospital "confinement" on October 30, 2017 and returned to the general prison population.  (TAC 8–9.) Because his "wound was leaking," however, Plaintiff "was forced to return to the hospital daily in order to obtain band[-]aid[s]."  (*Id.* at 9.)  These bandages were Plaintiff's "only change in

---

[1] Quotations to Plaintiff's submissions occasionally reflect minor corrections in grammar, punctuation, and spelling.

[2] A court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned . . . at any stage in the proceeding," including on a motion to dismiss. *Dumel v. Westchester County*, No. 19-CV-2161, 2021 WL 738365, at *1 n.5 (S.D.N.Y. Feb. 25, 2021) (alterations in original) (quoting *Allianz Glob. Investors GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 410 n.3 (S.D.N.Y. 2020)).  "Courts have taken judicial notice of facts from reputable medical sources such as the CDC in order to provide background information."  *Id.* (gathering cases).  Although Plaintiff describes MRSA as an "incurable, flesh-eating" disease, (TAC 8), MRSA can, in fact, be treated and cured, *see* CDC, *Methicillin-resistant* Staphylococcus aureus *(MRSA): For Patients*, https://www.cdc.gov/mrsa/community/patients .html (stating that MRSA can be treated, and that "there are antibiotics that can kill MRSA germs").

dressing" from September 26, 2017 until his return to the general population on October 30, 2017.  (*Id.*)  On November 5, 2017, the "wound's secretions were sent for laboratory testing," the results of which indicated that Plaintiff "was potentially, and probably[,] infecting staff and prison population with an incurable infectious disease."  (*Id.*)  Plaintiff was kept in "'punitive' isolation confinement," where he was medicated and quarantined until his release around November 13, 2017.  (*Id.*)  Plaintiff's principal grievance is that Green Haven staff allegedly failed to clean and dress his wound properly during the roughly month-long period he spent in the prison infirmary, and that he did not receive appropriate care for the wound until *after* he contracted MRSA.  (*See id.* at 14 (emphasizing that it was not until after Plaintiff contracted MRSA that a "separate nurse was assigned to cleanse and dress [his] wound daily and nightly").)  Plaintiff alleges that by contracting MRSA, he has suffered a "life-altering injur[y]."  (*Id.*)

Plaintiff purports to bring five causes of action against Defendants.  (*See id.* at 10.)  First, Plaintiff alleges that Defendants "show[ed] and demonstrate[d] indifference and an attitude of impunity" in "fail[ing] to act to mitigate [a] foreseeable risk of contracting [an] incurable infectious disease."  (*Id.* at 11.)  Second, Plaintiff alleges that Defendants Griffin and Bentivegna "condon[ed] unhygienic conditions under their watch.  (*Id.* at 12.)  Third, Plaintiff alleges that Defendant Kim "failed to reasonably supervise his nurses, resulting in an inexcusable failure to provide appropriate medical attention or treatment to protect the Plaintiff-patient from contracting a foreseeable . . . infection."  (*Id.* at 12–13.)  Fourth, Plaintiff alleges that Defendants Kim and Bentivegna "share the responsibility for the health and wellbeing of the Plaintiff-patient under their care as healthcare professionals and agents under the DOCCS Commissioner governed by State Directives . . . 4300 and 2614."  (*Id.* at 13.)  And fifth, Plaintiff alleges that Defendants McCarthy, Heitz, MacDonald, and Walsh "failed or refused to cleanse or change

3

[the] dressing on [Plaintiff's] open and leaking wound until it was determined that [he] had

contracted [MRSA]." (*Id.* (underlining and quotation marks omitted).)  Plaintiff requests a total

of $100 million in damages for the five causes of action. (*Id.* at 15.)

2. Allegations in Plaintiff's Putative Motion for Order to Show Cause

In a putative Motion for an order to show cause filed on February 19, 2021, Plaintiff

alleged that, "for the last [four to five] months," he had been "ordered to give blood samples no

less than twice a month, . . . without first being administered antibiotic medication." (Pl.'s Mot.

for Order to Show Cause ("Pl.'s Mot.") 5 (Dkt. No. 125).)  In so doing, Plaintiff alleges,

Defendants are "fail[ing] to observe the surgeon's warning about causing bleeding without first

administering antibiotics." (*Id.* at 6.)  He requests that Defendants be ordered to show cause as

to why a "preliminary and/or permanent injunction should not issue against [them] for failing to

observe the surgeon's instruction and warning against any proceeding that would cause bleeding

without first . . . administering antibiotics to prevent" a recurrence of MRSA. (*Id.* at 4.)

Plaintiff's putative Motion contains other allegations whose significance is not entirely

clear, except perhaps to provide context as to why Defendants were drawing Plaintiff's blood.

Specifically, Plaintiff was advised that his blood showed "irregularities" unrelated to MRSA,

and, at some point, "Defendants . . . decided [that] Plaintiff [has] cancer in his prostate." (*Id.*)

Plaintiff was scheduled for cancer surgery at a hospital outside Green Haven. (*Id.*)  As part of

pre-surgical preparation, Plaintiff was administered Ciprofloxacin and Amoxicillin, "which

served to provide relief" approximately 24 hours before he was scheduled to leave the prison for

his surgery. (*Id.*)  Plaintiff alleges that from January 29, 2021 through February 1, 2021, he "was

kept in punitive isolation confinement . . . and was not released or allowed to prevent Defendants

4

from imposing surgery on his prostate gland until [he] advised all parties that he would complain to the outside hospital about his [MRSA] being diagnosed as a prostate cancer." (*Id.* at 4–5.)

It is unclear whether Plaintiff ever received surgery to remove his prostate cancer. Indeed, Plaintiff appears to believe that his cancer diagnosis is merely a pretext by Defendants to conceal the fact that Plaintiff had contracted MRSA. (*See id.* at 7 (accusing Defendants of having "diagnos[ed] [his] life threatening injury and flesh eating, incurable bacterial infection as an alleged 'prostate cancer' warranting . . . further invasive surgery").)[3]  In any event, Plaintiff alleges that the cancer diagnosis was the "result of Defendants' ongoing analy[sis] of [his] blood, contrary to the surgeon's warning" not to cause bleeding without first administrating antibiotics to prevent a recurrence of MRSA. (*Id.* at 7.)

B.  Procedural History

Plaintiff filed his initial Complaint on June 12, 2019. (Dkt. No. 1.)  The Court granted Plaintiff in forma pauperis ("IFP") status on September 9, 2019. (Dkt. No. 11.)  Plaintiff filed an Amended Complaint on October 18, 2019. (Dkt. No. 15.)  After Plaintiff requested the

---

[3] Plaintiff outlined this theory in a letter filed December 2, 2020. (*See* Dkt. No. 118.)  As he explained, Defendant Kim had ordered a series of blood tests to check for prostate cancer due to Plaintiff's elevated white blood cell count. (*Id.*)  A specialist who evaluated Plaintiff determined that everything was "normal." (*Id.*)  "[I]t was determined," however, that Plaintiff should have a biopsy performed in order to determine what was causing his elevated white blood cell count. (*Id.*)  When Plaintiff asked the specialist whether MRSA could account for Plaintiff's elevated white blood cell count, the specialist advised Plaintiff that he had "no knowledge" of Plaintiff's having contracted MRSA. (*Id.*)  Based on this, Plaintiff concludes that Defendant Kim "is having . . . false conclusions derived from test[s]—without informing [the] specialist about [his] incurable MRSA disease." (*Id.*)  "Obviously," Plaintiff explains, Defendant Kim "sought to [have the specialist] overlook the effect of MRSA in [Plaintiff's] blood," and "[h]e now seeks to attribute the irregularity to 'cancer,' with the [attendant] invasive prostate biopsy!" (*Id.*)  Finally, in his December 2 letter, Plaintiff advised the Court that "[a]n injunction needs to be considered against Dr. Kim having access to additional medical input concerning [Plaintiff's] health and wellbeing because [Kim] is not to be trusted." (*Id.*)  In a more recent letter docketed on March 11, 2021, Plaintiff called the cancer diagnosis "wrongful," "dangerous," and "life threatening." (Dkt. No. 128.)

appointment of pro bono counsel, (Dkt. No. 20), the Court denied the request, explaining to Plaintiff that he must first "seek to obtain counsel, and explain to the Court what steps he has taken to do so before making a formal application for [such an] appointment," (Dkt. No. 21 (citing *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986))).  On November 25, 2019, Plaintiff filed his Second Amended Complaint.  (Dkt. No. 27.)  On May 11, 2020, Defendants filed a pre-motion letter regarding their anticipated motion to revoke Plaintiff's IFP status in light of a previous Bar Order issued under 28 U.S.C. § 1915(g) by the Honorable Loretta A. Preska.  (Dkt. No. 55.)  Pursuant to a briefing schedule adopted by the Court, (*see* Dkt. No. 57), Defendants filed their motion to revoke Plaintiff's IFP status on May 26, 2020, (Dkt. Nos. 71–73).  On June 9, 2020, Plaintiff filed the TAC.  (Dkt. No. 81.)  After Plaintiff established that he had paid the necessary filing fees, (*see* Dkt. Nos. 82–86, 88, 91, 92; Dkt. (entries for June 30, 2020; July 9, 2020)), Defendants conceded that their motion to revoke Plaintiff's IFP status was moot and outlined the grounds for their anticipated motion to dismiss the TAC, (Dkt. No. 96).  Pursuant to a briefing schedule adopted by the Court, (Dkt. No. 97), Defendants filed the instant Motion To Dismiss and supporting papers on August 31, 2020, (*see* Not. of Mot.; Decl. of Brendan M. Horan, Esq., in Supp. of Mot. ("Horan Decl.") (Dkt. No. 104); Decl. of Rachael Seguin in Supp. of Mot. ("Seguin Decl.") (Dkt. No. 105); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 106)).  Plaintiff filed his Opposition on September 9, 2020, (Dkt. No. 109), and filed supplemental papers on September 29 and October 1, 2020, (Dkt. Nos. 112–13).  Defendants filed their Reply on October 15, 2020.  (Dkt. No. 115.)

On February 19, 2021, Plaintiff filed his putative Motion for an order to show cause. (Dkt. No. 125.)  Plaintiff also filed two letters related to the allegations in this Motion.  As discussed in note 3 *supra*, Plaintiff filed a letter on December 2, 2020 alleging that Defendant

Kim had tried to conceal Plaintiff's MRSA infection from an outside specialist and was trying to attribute certain irregularities in Plaintiff's blood test results to prostate cancer. (Dkt. No. 118.) On February 17, 2021, Plaintiff filed a letter underscoring the urgency of his proposed order to show cause, explaining that, without it, "there is no telling where the [MRSA] infectious disease will again surface due to Defendants' failure to administer antibiotics prior to causing bleeding from drawing blood." (Dkt. No. 124.) On March 3, 2021, Defendants filed a letter explaining that, in order to fully rebut Plaintiff's putative Motion for an order to show cause, Defendants needed access to Plaintiff's medical records. (Dkt. No. 127.) Defendants also noted that although they had mailed medical release forms to Plaintiff in 2020, "none [had] been returned." (*Id.*) Defendants therefore requested that the Court issue an order compelling DOCCS to release Plaintiff's health records to Defendants and the Court. (*Id.*)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated

7

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted), and "his opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation and italics omitted)).

B.  Analysis

1.  Defendants' Motion To Dismiss

Defendants move to dismiss the TAC in its entirety on the ground that Plaintiff has failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*  (*See* Defs.' Mem. 7–11.)  Defendants also argue that

Plaintiff's claims with respect to Defendants Annucci, Bentivegna, Griffin, and Kim must be dismissed because the TAC fails to allege their personal involvement in any constitutional violation; that all claims against Defendants in their official capacity are barred by the Eleventh Amendment, because Plaintiff seeks only money damages under § 1983; and that, to the extent Plaintiff intends to pursue any state law claims, they are barred by New York Correction Law § 24. (*See id.* at 11–16.) The Court will consider these arguments only as necessary to resolve Defendants' Motion.

### a.  Exhaustion Requirements Under the PLRA

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement.  Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations and quotation marks omitted).  "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."  *Id.*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Moreover, the PLRA "requires proper exhaustion, which means using all steps that the

prison grievance system holds out, and doing so *properly* . . . .  Proper exhaustion demands

compliance with a prison grievance system's deadlines and other critical procedural rules."

*Williams*, 829 F.3d at 122 (alterations, citations, and quotation marks omitted).

To exhaust their administrative remedies, prisoners "must exhaust all levels" of

DOCCS's "Inmate Grievance Program" ("IGP").  *See Little v. Mun. Corp., City of New York*,

No. 12-CV-5851, 2017 WL 1184326, at *11 (S.D.N.Y. Mar. 29, 2017).  The IGP provides for a

three-step grievance process.  *See* N.Y. COMP. CODES R. & REGS. ("N.Y.C.R.R.") tit. 7, § 701 *et*

*seq.* (2021); *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y.

Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners'

claims," which is "a grievance system available to prisoners in custody at state prisons" (citing

7 N.Y.C.R.R. § 701.1(c))).  Under the framework used in typical cases, an inmate must first file a

complaint at the facility where the inmate is housed within 21 calendar days of an alleged

occurrence.  7 N.Y.C.R.R. § 701.5(a)(1).  Once filed, the representatives of the Inmate Grievance

Resolution Committee ("IGRC") have up to 16 calendar days to resolve the grievance

informally.  *Id.* § 701.5(b)(1).  If the matter is not satisfactorily resolved, the IGRC conducts a

hearing to either answer the grievance or make a recommendation to the superintendent, *id.*

§ 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.*

§ 701.5(b)(2)(ii).  The second step in the tripartite framework is for the grievant or any direct

party to appeal the IGRC's decision to the prison superintendent within seven calendar days after

receipt of the IGRC's written response, although the appealing party can seek an exception to the

time limit.  *See id.* § 701.5(c)(1).  The third and final step is to appeal the superintendent's

decision to the Central Office Review Committee ("CORC"), which the prisoner must do within

seven days of the superintendent's written response to the grievance.  *Id.* § 701.5(d)(1)(i).  Here,

too, an inmate may request an exception to the time limit.  *See id.*  "[O]nly after CORC has

reviewed the appeal and rendered a decision are New York's grievance procedures exhausted."

*Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

However, the PLRA contains one "textual exception to mandatory exhaustion."  *Ross*,

136 S. Ct. at 1858.  "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]'

of administrative remedies: An inmate, that is, must exhaust available remedies, but need not

exhaust unavailable ones."  *Id.* (alteration in original).  Available "grievance procedures . . . are

capable of use to obtain some relief for the action complained of."  *Id.* at 1859 (quotation marks

omitted).  In *Ross*, the Supreme Court provided "three kinds of circumstances in which an

administrative remedy, although officially on the books, is not capable of use to obtain relief."

*Id.*  The Supreme Court explained that an administrative remedy is unavailable when: (1) "it

operates as a simple dead end—with officers unable or consistently unwilling to provide any

relief to aggrieved inmates"; (2) "an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief,

but no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates

from taking advantage of a grievance process through machination, misrepresentation, or

intimidation."  *Id.* at 1859–60.  The Second Circuit has noted "that the three circumstances

discussed in *Ross* do not appear to be exhaustive," but has declined to "opine on what other

circumstances might render an otherwise available administrative remedy actually incapable of

use."  *Williams*, 829 F.3d at 123 n.2.

A plaintiff need not plead that one of these three circumstances exists or that he did in

fact exhaust his administrative remedies, because, as noted, the "[f]ailure to exhaust

administrative remedies is an affirmative defense under the PLRA, not a pleading requirement."

*Id.* at 122.  Defendants bear the burden of proving that Plaintiff failed to exhaust available administrative remedies.  *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." (citation omitted)).  Thus, as noted, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint."  *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (citation omitted).

### b.  Whether Nonexhaustion Is Clear From the Face of Plaintiff's TAC

Here, Defendants acknowledge that "Plaintiff['s] [TAC] does not explicitly concede that he failed to exhaust administrative remedies."  (Defs.' Mem. 8.)  Defendants argue, however, that Plaintiff's failure to exhaust is clear based on certain documents outside the four corners of the TAC.  Specifically, Defendants point to an August 5, 2019 letter (the "August 2019 Letter"), filed with the Court, in which Plaintiff wrote:

> With respect to exhaustion of administrative remedies as required[:] [The] relevant inmate grievance No. GH-88297-17, entitled "Threats/Retaliation For Prior Grievance," was received by CORC on April 10, 2018, where [the] grievance continues to languish without compliance with administrative remedies under Directive #4040.  Exhaustion ha[s] been satisfied . . . as dysfunctional.

(Letter from Pl. to Court (Aug. 5, 2019) ("Pl.'s Aug. 2019 Letter") 1 (ellipsis in original) (Dkt. No. 4).)  In support of their Motion, Defendants have submitted a Declaration from Rachael Seguin ("Seguin"), CORC's custodian of records, whose Declaration attached (i) Grievance No. GH-88297-17 ("Grievance 88297"), the specific grievance referenced in Plaintiff's August 2019 Letter, and (ii) a complete record of the grievance appeals CORC has received from Plaintiff during his incarceration, among other documents.  (Seguin Decl. ¶¶ 6, 10; Seguin Decl. Ex. B

("CORC Recs.") (Dkt. No. 105-2); Seguin Decl. Ex. C ("Griev. 88297") (Dkt. No. 105-3).)

Seguin states that Plaintiff appealed only two grievances to CORC for grievances filed on or

after September 1, 2017.  (Seguin Decl. ¶ 9.)  Defendants argue that Grievance 88297—which

Plaintiff himself characterized as the "relevant inmate grievance," (Pl.'s Aug. 2019 Letter 1)—

"does not refer to, let alone provide[,] a concise, specific description of the problem that

underlies this [A]ction" as required by DOCCS procedures, (Defs.' Mem. 10 (quotation marks

omitted).)  The only other grievance Plaintiff filed after September 1, 2017, Defendants argue,

likewise "does not relate to the allegations underlying this suit."  (*Id.* at 11.)

    As a threshold matter, the Court must decide whether it may even consider these extrinsic

documents, particularly Grievance 88297, in resolving Defendants' Motion To Dismiss.

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking

no account of its basis in evidence, a court adjudicating such a motion may review only a narrow

universe of materials."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  In general, courts

"do not look beyond facts stated on the face of the complaint, documents appended to the

complaint or incorporated in the complaint by reference, and matters of which judicial notice

may be taken."  *Id.* (citation, quotation marks, and ellipses omitted).  The Second Circuit has

recognized, however, that courts may sometimes consider certain "document[s] not expressly

incorporated by reference in the complaint."  *Id.*  In *ATSI Communications, Inc. v. Shaar Fund,

Ltd.*, 493 F.3d 87 (2d Cir. 2007), for example, the Second Circuit indicated that courts may

consider "documents possessed by or known to the plaintiff and upon which [the plaintiff] relied

in bringing the suit."  *Id.* at 98.  In *Goel*, similarly, the Second Circuit said that courts may

consider documents that are "integral" to a complaint.  820 F.3d at 559.  The question here is

whether Grievance 88297 either is incorporated in the TAC, or otherwise falls into one of the special categories of documents this Court may consider on a motion to dismiss.

Defendants suggest that Grievance 88297 was incorporated in the TAC by reference, and may therefore be considered on this basis. (Defs.' Mem. 9.) Arguing that "Plaintiff references his grievance and its contents in the TAC," Defendants direct the Court to a passage in which Plaintiff writes:

> [Defendants] were all informed by Plaintiff's certified mail about the facility failing to feed [him] or provide any food upon [his] release from the hospital to [his] cell, failed to provide physical therapy, and failed to cleanse [his] wound[.] [S]uch grievances and correspondences were referred to deputy commissioners, prior to discovery of incurable infection and after infection was arrested.

(*Id.* (quoting TAC 11).) The Court is not persuaded that this passage is sufficient to incorporate Grievance 88297 by reference. "For [a] document[] to be incorporated by reference, the plaintiff must make a 'clear, definite[,] and substantial reference to the documents.'" *Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, No. 14-CV-7134, 2015 WL 4940126, at *7 (S.D.N.Y. Aug. 10, 2015) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)); *accord Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017). Here, the TAC's purported reference to Grievance 88297 is neither clear, nor definite, nor substantial. In the passage Defendants cite, Plaintiff appears to reference three distinct instances of alleged wrongdoing on the part of Green Haven staff, only one of which is the subject of this suit. (*See* Defs.' Mem. 9; TAC 11.) He then makes the cryptic statement that "such grievances and correspondences were referred to deputy commissioners, prior to discovery of incurable infection and after infection was arrested." (Defs.' Mem. 9 (brackets omitted); TAC 11.) Even assuming this passage refers in part to Grievance 88297, a fleeting (and ambiguous) reference to that document does not suffice to incorporate it by reference. *See QED, LLC v. Faber Daeufer &*

15

*Itrato, P.C.*, No. 20-CV-2767, 2021 WL 707073, at *2 (S.D.N.Y. Feb. 22, 2021) ("A mere

passing reference or even references . . . to a document outside of the complaint does not, on its

own, incorporate the document into the complaint itself." (quoting *Williams v. Time Warner Inc.*,

440 F. App'x 7 (2d Cir. 2011) (summary order))); *see also Morgan v. Ward*, No. 14-CV-7921,

2016 WL 427913, at *3 (S.D.N.Y. Feb. 2, 2016) (concluding that a plaintiff's reference to

grievances he had previously filed with the Bureau of Prisons did not incorporate those

grievances by reference).  Nor does Plaintiff's affirmation on page 17 of the TAC—in which he

states, "I also understand that prisoners must exhaust administrative procedures before filing an

action in federal court about prison conditions, and that my case may be dismissed if I have not

exhausted administrative remedies," (TAC 17 (citation omitted))—incorporate his grievance by

reference.  As a court in this District recently observed with respect to identical language used by

another pro se litigant, a "reference to the PLRA's exhaustion requirement in the abstract does

not incorporate [a prison's] grievance procedure—or [the plaintiff's] grievances themselves—

into . . . [a] [c]omplaint."  *Correa v. Lynch*, No. 20-CV-2875, 2021 WL 2036697, at *4 (S.D.N.Y.

May 20, 2021); *see also Smith v. Baker*, No. 11-CV-542, 2012 WL 6948839, at *2 (N.D.N.Y.

Nov. 13, 2012) (observing that a "plaintiff's statement that he exhausted his remedies does not

incorporate all of his past grievances into the complaint").

    Although the Court's conclusion is in some tension with *James v. Correct Care Solutions*,

No. 13-CV-19, 2013 WL 5730176 (S.D.N.Y. Oct. 21, 2013), a case cited by Defendants, (*see*

Defs.' Mem. 9), the Court finds the analysis in *James* does not alter the result here.  There, the

sum and substance of the court's discussion with respect to incorporation was as follows:

> In his complaint, [the] [p]laintiff specifically refers to the grievance by noting that
> the attempted administrative channels before filing this suit [sic].  Although [the]
> [p]laintiff did not include the grievance as an exhibit, [the] [p]laintiff nonetheless
> incorporated the grievance by reference.

*James*, 2013 WL 5730176, at *3.  It is not clear how a plaintiff could "*specifically* refer[]" to a

grievance merely by stating that "administrative channels" had been "attempted."  *See id.*

(emphasis added).  Moreover, even if the plaintiff in *James* had identified his prior grievance

with specificity, the court's conclusion there requires the same result here, as this Court will

adhere to the principle that incorporation requires not only a clear and definite reference to a

particular document, but a *substantial* reference to that document as well.  *Atlas Partners*, 2015

WL 4940126, at *7; *see also DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y.

2010) ("'Limited quotation' of documents not attached to the complaint 'does not constitute

incorporation by reference.'" (brackets omitted) (quoting *Goldman v. Belden*, 754 F.2d 1059,

1066 (2d Cir. 1985))).[4]  In sum, *James* does not alter the Court's conclusion that Grievance

88297 has not been incorporated in the TAC by reference.

 Invoking *ATSI Communications*, Defendants also argue that the Court may consider

Grievance 88297 because this document (i) was possessed by and known to Plaintiff, and (ii)

Plaintiff relied on the document in bringing this suit.  (Defs.' Mem. 8–9 (citing *ATSI Commc'ns*,

493 F.3d at 98).)  Defendants point to the fact that Plaintiff referred to this particular grievance in

correspondence with the Court, and therefore "was aware of [the document] at the time he

---

[4] For the same reasons, the Court declines to follow other decisions indicating that courts may consider extrinsic evidence of exhaustion on a 12(b)(6) motion merely by virtue of the fact that a complaint "state[s] that the inmate exhausted administrative remedies," *see Adams v. George*, No. 18-CV-2630, 2020 WL 5504472, at *6 (S.D.N.Y. Sept. 8, 2020); *see also Williams v. Annucci*, No. 16-CV-7288, 2018 WL 3148362, at *5 (S.D.N.Y. June 27, 2018) (same proposition).  As the discussion above indicates, the Court instead favors the approach taken in *Correa*, in which the court concluded that a "reference to the PLRA's exhaustion requirement in the abstract does not incorporate [a prison's] grievance procedure—or [the plaintiff's] grievances themselves—into . . . [a] [c]omplaint."  *Correa*, 2021 WL 2036697, at *4.  In the Court's view, this approach more faithfully applies the principle that incorporation requires "a clear, definite[,] and substantial reference to the documents."  *DeLuca*, 695 F. Supp. 2d at 60 (citation omitted).

drafted the TAC." (*Id.* at 9.) Defendants argue that Plaintiff then "rel[ied] on [this grievance]

when stating in the TAC that '[he] . . . underst[oo]d that prisoners must exhaust administrative

procedures before filing an action in federal court about prison conditions.'" (*Id.* (quoting TAC

17).)

      As an initial matter, the Court hesitates to assume that the rule articulated in *ATSI*

*Communications* has broad application beyond the narrow context of securities litigation. In that

case, which involved misrepresentation and market manipulation claims under the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated

thereunder, 17 C.F.R. § 240.10b-5, *see* 493 F.3d at 93, the court recited the rule that, in addition

to considering allegations in the complaint, written instruments attached thereto, and statements

or documents incorporated therein by reference, courts may also consider "legally required

public disclosure documents filed with the [Securities and Exchange Commission], and

documents possessed by or known to the plaintiff and upon which it relied in bringing the suit,"

*id.* at 98. The court borrowed this rule from *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000), a

securities case arising under the Exchange Act and Rule 10b-5, *see id.* at 89. *Rothman*, in turn,

had taken the rule from yet another securities case, *Cortec Industries, Inc. v. Sum Holding L.P.*,

949 F.2d 42 (2d Cir. 1991), which also involved claims under the Exchange Act (among other

securities laws), *see id.* at 45–46. In *Cortec*, the Second Circuit explored the rationale

underpinning this rule:

> [W]e have held that when a plaintiff chooses not to attach to the complaint or
> incorporate by reference a prospectus upon which it solely relies and which is
> integral to the complaint, the defendant may produce the prospectus when attacking
> the complaint for its failure to state a claim, because [a] plaintiff should not so easily
> be allowed to escape the consequences of its own failure.

*Id.* at 47 (citing *I. Meyer Pincus & Assoc. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991)).  As the court explained, a plaintiff's notice of such documents obviates the "problem that arises when a court reviews statements extraneous to a complaint," namely, "the lack of notice to the plaintiff that they may be so considered."  *Id.* at 48.  In *Cortec*, therefore, the court concluded that a district court was entitled to consider a stock purchase agreement, offering memorandum, and purchase warrant—documents of which the plaintiffs had knowledge or possession, and "upon which they relied in bringing suit," despite not being attached to the complaint or incorporated by reference therein.  *Id.*  Although there is a viable argument that the rule in *Cortec* should be extended to prisoners' grievance submissions, the Second Circuit has tended to invoke the rule primarily in the securities context.  *See, e.g.*, *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) (invoking rule in securities case); *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (same); *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014) (same); *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013) (same); *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 481 (2d Cir. 2011) (same); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 708 (2d Cir. 2011) (same); *Slayton v. Am. Express Co.*, 604 F.3d 758, 763 (2d Cir. 2010) (same); *but see Mary Jo C. v. N.Y. State & Loc. Retirement Sys.*, 707 F.3d 144, 149 (2d Cir. 2013) (invoking rule in case brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.*).

Even if the Court were to apply the rule in *Cortec* (and later invoked in *ATSI Communications*), however, the Second Circuit has clarified that where a defendant seeks to rely on a document not attached to the complaint or incorporated by reference therein, "a plaintiff's *reliance* on the terms and effect of [that] document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; [the plaintiff's]

mere notice or possession [of the document] is not enough." *Chambers*, 282 F.3d at 153.  That is

consistent with the rule that courts may consider certain documents not expressly incorporated

by reference in a complaint provided those documents are "integral" to the complaint.  *Goel*, 820

F.3d at 559.  "A document is integral to the complaint 'where the complaint relies heavily upon

its terms and effect.'"  *Id.* (quoting *Chambers*, 282 F.3d at 153).  The Second Circuit has made

clear that "[m]erely mentioning a document in the complaint will not satisfy this standard," and,

as noted, "even offering 'limited quotations' from the document is not enough."  *Id.* (brackets

and citation omitted).  Defendants state in conclusory fashion that Plaintiff "rel[ied] on" his

grievance "when stating in the TAC" that he understood he was required to exhaust

administrative procedures before filing an action in federal court.  (Defs.' Mem. 9.)  They also

suggest that Plaintiff relied on his grievance merely by referring to it in the TAC.  (*See id.*)  But

Defendants fail to explain how either of these putative references to Grievance 88297 constitutes

"*reliance* on the terms and effects of [that] document."  *Chambers*, 282 F.3d at 153.  This failure

is particularly striking given the Second Circuit's clear admonition that simply referencing a

document in a complaint does not rise to the level of reliance.  *See Goel*, 820 F.3d at 559.

Because Plaintiff does not rely on the "terms and effects" of his prior grievance, this document is

not "integral" to the TAC, *see id.*, and Plaintiff's "mere notice or possession" of the document is

not enough for the Court to consider it in resolving Defendants' Motion, *see Chambers*, 282 F.3d

at 153; *see also Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, at *5 (S.D.N.Y. Feb. 8, 2017)

(concluding that the plaintiff's statement in his complaint that he "filed a grievance and wrote

other complaints to [the] Central Office in Albany" was not enough to allow the court to consider

defendants' extrinsic documents on a motion to dismiss (brackets omitted)); *Morgan*, 2016 WL

427913, at *3 (concluding that where the plaintiff merely "referred to [his] grievances," but did

not "refer to the text of the grievances to establish the substance of his claims," the plaintiff's references did not "render the grievances themselves 'integral' to the complaint"); *Mena v. City of New York*, No. 12-CV-6838, 2013 WL 1352081, at *3 (S.D.N.Y. Apr. 4, 2013) (report & recommendation) (declining to consider extrinsic documents on a motion to dismiss where "it [was] not evident that [the plaintiff] [had] relied on th[o]se documents in drafting his complaint," and converting the motion to one for summary judgment instead), *adopted by* 2013 WL 3580057 (S.D.N.Y. July 10, 2013); *Pierce v. Monell*, No. 06-CV-1290, 2007 WL 2847317, at *6 (N.D.N.Y. Sept. 26, 2007) (declining to consider the plaintiff's four prior grievance forms where "they [were] nowhere relied on, or referenced, by [the] [p]laintiff in his [c]omplaint") (report & recommendation adopted).

For the reasons discussed above, it is not "clear on the face of the [TAC] that the [P]laintiff did not satisfy the PLRA exhaustion requirement," *Williams*, 829 F.3d at 122, and the Court finds that it may not consider Grievance 88297, or any other extrinsic documents, in resolving the instant 12(b)(6) Motion.

### c.  Conversion to Summary Judgment

Defendants correctly note, however, that the Court may convert part of their 12(b)(6) Motion into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.  (*See* Defs.' Mem. 9.)  Where, as here,

> nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted . . . to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused.

*Roland v. Smith*, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012) (quoting *McCoy*, 255 F. Supp. 2d at 251); *see also Mena*, 2013 WL 1352081, at *3 ("With respect to the defense of failure to exhaust

under the PLRA, 'if, as is usually the case, it is not clear from the face of the complaint whether

the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle.'" (quoting *McCoy*, 255

F. Supp. 2d at 249)).  "When converting a motion to dismiss into a motion for summary

judgment under Fed. R. Civ. P. 12(d), notice to the parties is mandated, particularly when a pro

se litigant is involved."  *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *7

(S.D.N.Y. Mar. 6, 2020) (citation, brackets, and underlining omitted).  Moreover, in the context

of exhaustion under the PLRA, courts usually insist upon limited discovery before converting a

12(b)(6) motion into a motion for summary judgment.  *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL

7410722, at *5 (S.D.N.Y. Dec. 21, 2016); *see also Lovick v. Schriro*, No. 12-CV-7419, 2014 WL

3778184, at *5 (S.D.N.Y. July 25, 2014) (observing that, "when converting a [m]otion to

[d]ismiss into a [m]otion for [s]ummary [j]udgment under Fed. R. Civ. P. 12(d), notice to the

parties is mandated, particularly when a pro se litigant is involved," and therefore "permit[ting]

the parties to engage in limited discovery confined solely to the issue of administrative

exhaustion" (italics omitted)); *Pratt v. City of New York*, 929 F. Supp. 2d 314, 319 (S.D.N.Y.

2013) (noting that the court could convert a motion to dismiss into one for summary judgment on

the issue of PLRA exhaustion, but observing that, if it were to do so, "the parties would be

entitled to an opportunity to take discovery and submit additional relevant evidence").

"Discovery is not necessary, however, when the facts regarding plaintiff's efforts at exhaustion

are not disputed, and it does not appear that any amount of discovery would change the

outcome."  *Gottesfeld*, 2020 WL 1082590, at *7 (citation, quotation marks, and brackets omitted)

(finding that discovery was unnecessary—despite the plaintiff's pro se status—because the

relevant facts were undisputed, and no amount of discovery would change the outcome).

Here, because it is not clear on the face of the TAC that Plaintiff failed to exhaust his administrative remedies, the Court will convert Defendants' motion to dismiss into a motion for summary judgment.  Pursuant to Local Civil Rule 12.1, Defendants gave Plaintiff notice that their Motion could be converted into a summary judgment motion, and explained to him the consequences of that possibility.  (*See* Defs.' Mem. 9; Not. to Pro Se Litigant Who Opposes a Rule 12 Mot. ("Rule 12 Not.") (Dkt. No. 107).)  *Cf., e.g.*, *Gottesfeld*, 2020 WL 1082590, at *7 (converting motion to dismiss to summary judgment motion where the plaintiff "was given notice that [the] [d]efendants' motion to dismiss might be converted into a motion for summary judgment, and he was informed of the consequences of such a conversion").  In particular, the notice explained to Plaintiff that he "may NOT oppose the [D]efendant[s'] motion simply by relying upon the allegations in [his] complaint[,] [but that he] must submit evidence, such as witness statements or documents, countering the facts asserted by the [D]efendant[s] and raising specific facts that support [his] claim." (Rule 12 Not. 2.)[5]  Defendants' notice is sufficient to allow conversion.  *See Gottesfeld*, 2020 WL 1082590, at *3 n.6, *7 (allowing conversion based on substantially identical notice) (gathering similar cases).

### d.  Whether Plaintiff Exhausted Administrative Remedies

Here, as noted, Defendants have submitted a record of Plaintiff's grievance appeals received by CORC.  (*See generally* CORC Recs.)  CORC received only two appeals from Plaintiff based on grievances that were filed after the events in this case, which allegedly occurred sometime between September 26, 2017 and October 30, 2017.  (*See* Seguin Decl. ¶ 9;

---

[5] Defendants' notice further stated: "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits as required by Rule 56(c) and/or other documents."  (Rule 12 Not. 1.)  The notice also attached the full text of Fed. R. Civ. P. 56(c). (*See* Rule 12 Not. Ex. 1 (Dkt. No. 107-1).)

CORC Recs. 1–2; TAC 8.)  In other words, there are only two grievances post-dating the events

in question that could have satisfied the IGP's exhaustion requirements.  One of these

grievances—Grievance 88297—was filed on December 5, 2017 and received by CORC on April

10, 2018.  (CORC Recs. 2.)  Entitled "Threats/Retaliation For Prior Grievance," Grievance

88297 does not mention MRSA or discuss any of the events that allegedly gave rise to this

Action.  (*See* Griev. 88297, at 1–7.)  The second grievance was not filed until May 17, 2019, (*see*

CORC Recs. 1), well outside the 21-day window in which Plaintiff could have filed a grievance

based on the events in question, *see* 7 N.Y.C.R.R. § 701.5(a)(1).  In any case, this grievance also

has nothing to do with the events in this case.  (*See* Seguin Decl. Ex. D (Dkt. No. 105-4).)  It is

clear, therefore, that Plaintiff failed to exhaust his administrative remedies in response to the

alleged events in this case.

        In response to Defendants' exhaustion argument, Plaintiff contends that this Action

"concerns issues that are not grievable."  (Pl.'s Resp. to Defs.' Mot. ("Pl.'s Resp.") 2 (Dkt. No.

109).)  Though Plaintiff's argument can prove hard to discern, he appears to believe that his

alleged injury, and the events giving rise thereto, fall outside the scope of the IGP framework,

and thus, he is excused from having to exhaust his administrative remedies in this case.  (*See,*

*e.g.*, *id.* at 5–6.)  Plaintiff is mistaken.  As Defendants note in their Reply, medical issues are not

included in the list of non-grievable issues set forth in DOCCS Directive 4040, which outlines

the IGP's policies and procedures.  (*See* Defs.' Reply Mem. of Law in Further Supp. of Mot.

("Defs.' Reply") 2 (Dkt. No. 115); Seguin Decl. ¶ 3; Seguin Decl. Ex. A ("Dir. 4040"), at

§ 701.3(e) (Dkt. No. 105-1).)  Moreover, "[i]t is well settled . . . that a dispute over the quality of

an inmate's medical treatment falls within the PLRA, and thus is subject to the administrative

exhaustion requirement."  *Tolliver v. N.Y. State Dep't of Corr. Servs.*, No. 08-CV-4561, 2009 WL

618371, at *4 (S.D.N.Y. Mar. 12, 2009); *see also Neal v. Goord*, 267 F.3d 116, 119–20 (2d Cir. 2001) (concluding that complaints regarding "poor medical treatment" amount to "ordinary garden variety complaints about 'prison conditions'" that are subject to administrative exhaustion), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).

Although Plaintiff's alleged injury was subject to the administrative exhaustion requirement, Plaintiff also appears to raise the separate (and more serious) argument that an administrative remedy was unavailable to him, (*see* Pl.'s Resp. 11), thereby implicating the "textual exception to mandatory exhaustion," *Ross*, 136 S. Ct. at 1858.  In his Response to Defendants' Motion, Plaintiff avers that he was "[p]reviously . . . informed by his grievance representative(s) that certain issues, such as violations of Eighth Amendment protections, were beyond the scope [of], or not grievable under, state legislative law."  (Pl.'s Resp. 11.)[6]  He also states that his "contraction of [MRSA] . . . was previously determined to be an issue beyond the scope of the [IGP] because there is no feasible resolution."  (*Id.*)  Although Plaintiff does not explain *who* advised him that his injury was not subject to exhaustion, or *when* this determination was reached, he still plausibly describes a circumstance in which prison administrators may have "thwart[ed] [him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation"—one of the recognized exceptions to exhaustion.  *Id.* at 1859–60; *see also White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *7 (S.D.N.Y. Dec. 21, 2018) (administrative remedies deemed unavailable where "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures" (citation and italics omitted)).

---

[6] Plaintiff presumably means to refer to the grievance requirements set forth in 7 N.Y.C.R.R. § 701.5.

In light of Plaintiff's allegations, "[t]he circumstances surrounding . . . whether the grievance process was available to [Plaintiff] are unclear." *Wing v. Myers*, No. 18-CV-11056, 2019 WL 6732967, at *5, *6 (S.D.N.Y. Dec. 11, 2019) (declining to dismiss action where the plaintiff had "suggest[ed], even if barely, that he [had] received a specific threat" thwarting his use of grievance procedures). Here, "[a]s when non-exhaustion is not clear on the face of a complaint, dismissal is similarly inappropriate [because] one of the exceptions [to exhaustion] may well be applicable." *Id.* at *5 (brackets omitted) (quoting *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *13 n.15 (S.D.N.Y. Mar. 31, 2016)). A full record may well show that Plaintiff's allegations are unfounded, in which case the Court must necessarily dismiss this Action for Plaintiff's failure to exhaust available administrative remedies. "[I]t would be premature to dismiss the [TAC]" before discovery, however, "when it is possible that administrative remedies were rendered unavailable to Plaintiff." *Id.* at *6 (quotation marks and brackets omitted) (quoting *Shaw*, 2016 WL 7410722, at *5).

Accordingly, the Court denies Defendants' Motion but orders the Parties to conduct limited discovery solely on the issue of administrative exhaustion, to be completed within 60 days of the date of this Opinion & Order. The Parties must focus on whether correctional staff advised Plaintiff that his contraction of MRSA was not a grievable injury, and therefore not subject to administrative exhaustion requirements. Defendants may file a motion for summary judgment following the close of this limited discovery.

Because "exhaustion is a prerequisite to suit," *Porter*, 534 U.S. at 524, the Court declines to reach the merits of the case until the exhaustion issue is resolved. The Court need not consider Defendants' additional arguments unless it concludes that Plaintiff did not have an available administrative remedy to exhaust.

26

### 2.  Plaintiff's Putative Motion for Order to Show Cause

As noted, Plaintiff argues that Defendants should be ordered to show cause as to why a "preliminary and/or permanent injunction should not issue against [them] for failing to observe the surgeon's instruction" to administer antibiotics before conducting any blood draws.  (Pl.'s Mot. 4.)  The Court declines to issue the proposed order, as Plaintiff has shown neither irreparable harm nor a likelihood of success on the merits.

"[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law."  *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation and quotation marks omitted). Regardless whether he seeks permanent or preliminary injunctive relief, Plaintiff must show that he will suffer irreparable harm if an injunction does not issue.  *See Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2011) (stating that a permanent injunction requires, *inter alia*, a showing of irreparable harm); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (same with respect to preliminary injunction).  "Irreparable harm requires an 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'"  *Johnson v. Padin*, No. 20-CV-637, 2020 WL 4818363, at *6 (D. Conn. Aug. 16, 2020) (ultimately quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)).  Here, although Defendants allegedly violated a surgeon's "instruction" not to draw blood without administering antibiotics, (Pl.'s Mot. 4), the harm Plaintiff describes is speculative in nature: Defendants' actions supposedly could fail "to prevent [a] [recurrence] . . . [of Plaintiff's] MRSA infection," (*id.*).  Notably, Plaintiff does not allege that he has experienced any such recurrence.  (*See id.*)  Without a greater showing that his "medical condition . . . is likely to become significantly worse" in the absence of an injunction, Plaintiff's alleged harm—

the "mere possibility" of another MRSA infection—is too conjectural to warrant injunctive

relief. *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *1, *2 (S.D.N.Y. June 27, 1994)

(denying injunctive relief to a plaintiff who had "failed to demonstrate that his medical condition

[was] under threat of worsening without treatment"); *see also El-Massri v. New Haven Corr. Ctr.*,

No. 18-CV-1249, 2019 WL 6606457, at *7–10 (D. Conn. Dec. 5, 2019) (denying injunctive relief

where the plaintiff had received "a series of ongoing medical treatments without judicial

intervention," and where the "facts suggest[ed] that [the plaintiff's] medical issue [did] not

present imminent or irreparable harm if the injunction [were] not granted" (quotation marks and

citation omitted)); *Gilmore v. Blair*, No. 18-CV-463, 2019 WL 4926303, at *2 (N.D.N.Y. Oct. 7,

2019) (denying injunctive relief to plaintiff who "ha[d] simply expressed concern that . . . he may

be denied medical attention  . . . , which [was] purely speculative and, therefore, patently

insufficient to make the showing required for the issuance of preliminary injunctive relief");

*Phelan v. Hersh*, No. 10-CV-11, 2010 WL 277064, at *6 (N.D.N.Y. Jan. 20, 2010) (denying

request for injunctive relief based on the plaintiff's "alleg[ation] that he may suffer irreparable

harm should his motion be denied" (emphasis omitted)).

In addition, Plaintiff has failed to show a likelihood of (or actual) success on the merits,

as is also required for injunctive relief.  *See Ognibene*, 671 F.3d at 182 (stating that permanent

injunctive relief requires actual success on the merits); *Cacchillo*, 638 F.3d at 405–06 (stating

that preliminary injunction requires likelihood of success on the merits).  "The logic by which

failures in medical treatment are actionable under 42 U.S.C. § 1983 is that denial of medical care

may rise to the level of cruel and unusual punishment in violation of the Eighth Amendment."

*Davidson v. Scully*, 914 F. Supp. 1011, 1015 (S.D.N.Y. 1996).  To state a claim for deliberate

indifference to medical needs under the Eighth Amendment, an inmate must plausibly allege

both (1) that the "alleged deprivation of adequate medical care [was] sufficiently serious," and (2) that the prison officials were "subjectively reckless in their denial of medical care." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted). The second element, which goes to mental state, requires that the official "appreciate[d] the risk to which a prisoner was subjected," and had a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation omitted)).

Even assuming—solely for purposes of resolving Plaintiff's putative Motion—that Defendants' alleged failure to administer antibiotics before drawing blood constitutes a "sufficiently serious" "deprivation of adequate medical care," thus satisfying the first element of a deliberate indifference claim, *Spavone*, 719 F.3d at 138, Plaintiff fails to allege any facts that would satisfy the second element of his claim. The facts here are similar to those in *Washington v. Westchester County Department of Correction*, No. 13-CV-5322, 2014 WL 1778410 (S.D.N.Y. Apr. 25, 2014), where the plaintiff alleged that although he had been prescribed medication to treat MRSA, the defendants "discontinued those medications and failed to prescribe him new ones, despite their promise to do so," *id.* at *6. The court observed that although a "[d]elay in providing medication can rise to the level of deliberate indifference," that is the case "only where a plaintiff's allegations indicate that the defendants, for instance, 'deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for a period of time, or delayed major surgery for over two years.'" *Id.* at *7 (brackets and citation omitted).

But here, as in *Washington*, Plaintiff fails to allege facts indicating that Defendants "deliberately withheld his medication as a form of punishment, or discontinued his medication while being aware that serious, life-threatening consequences could result therefrom." *Id.* He does not allege, for example, that he informed any of the Defendants "that he was experiencing any discomfort or pain due to the delay in receiving the medicine," nor does he allege that Defendants were aware that depriving him of antibiotics could (allegedly) "create a substantial risk of serious harm." *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *5 (S.D.N.Y. July 12, 2012) (dismissing Eighth Amendment deliberate indifference claim where the plaintiff failed to allege more than "an inadvertent failure to provide adequate medical care" (citation omitted)). Without any allegations that speak to Defendants' mental state, Plaintiff's assertion that Defendants "simply failed" to administer medications "is insufficient to state a claim for deliberate indifference." *Washington*, 2014 WL 1778410, at *7; *see also Bell*, 980 F. Supp. at 560–61 (dismissing deliberate indifference claim where the plaintiff "merely allege[d] a delay in the provision of medication or treatment, but fail[ed] to allege that the delay was either intentional or reckless"); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 735–36 (S.D.N.Y. 2002) (dismissing deliberate indifference claim where the plaintiff's "assertions [did] not show that [the defendant] acted intentionally to withhold from him his prescribed medication or was in any way responsible for the delay in obtaining a refill of his medication").

Although the Court will not issue Plaintiff's proposed order to show cause at this time, the Court's denial is without prejudice. "Plaintiff is advised, however, that any renewed request for injunctive relief must be supported by evidence, as opposed to mere allegations, showing that the alleged irreparable harm is imminent." *Cox v. Morley*, No. 20-CV-1235, 2020 WL 6781522, at *10 n.13 (N.D.N.Y. Nov. 18, 2020); *see also Perkins v. Rock*, No. 12-CV-1269, 2013 WL

4781762, at *2 (N.D.N.Y. Sept. 5, 2013) (noting that a plaintiff's previous request for preliminary injunctive relief was appropriately denied where the plaintiff's allegations of harm were "purely speculative" and unsupported "by any evidence, such as exhibits, medical reports, affidavits from other inmates, or any other proof"); *Burgess v. Goord*, No. 05-CV-142, 2005 WL 1458236, at *3 (N.D.N.Y. June 15, 2005) (observing that "a party is not entitled to injunctive relief unless there is . . . proof of a likelihood of succeeding on the merits of a claim, *or evidence that establishes sufficiently serious questions going to the merits of such a claim*" (emphasis added)).  In other words, if Plaintiff wishes to renew his request for an order to show cause, he should provide the Court with medical records, affidavits, or other documentary evidence in support of his theory that Defendants' alleged failure to administer antibiotics prior to drawing blood presented a risk of irreparable harm.

### III.  Conclusion

For the reasons stated above, Defendants' Motion is denied, but the Parties are ordered to complete limited discovery, solely on the issue of administrative exhaustion, within 60 days of the date of this Opinion & Order.  Defendants may file a motion for summary judgment following this discovery.  Plaintiff's putative Motion is denied without prejudice.  If Plaintiff wishes to renew his application for an order to show cause, he must do so within 30 days of the date of this Opinion & Order.  The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 103 and 125), and mail a copy of this Opinion & Order to Plaintiff. SO ORDERED.

Dated:    September 24, 2021
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

31