UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RALPH HALL,

                        Plaintiff,

            -v-

ANTHONY ANNUCCI, *et al.*,

                        Defendants.

No. 19-CV-5521 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Ralph Hall
Stormville, NY
*Pro Se Plaintiff*

Jeb Harben, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Ralph Hall ("Plaintiff"), proceeding pro se, brings the instant Action, pursuant to 42

U.S.C. § 1983, against Anthony Annucci, Acting Commissioner of the New York State

Department of Corrections and Community Supervision ("DOCCS"); Thomas Griffin,

Superintendent of Green Haven Correctional Facility ("Green Haven" or "GHCF"); Dr. Robert

Bentivegna, a "Medical Supervisor" at Green Haven; Dr. Kyoung Kim, a "Medical Provider" at

Green Haven; and Green Haven Nurses Aileen McCarthy, Donna Heitz, Deborah MacDonald,

and Nicole Walsh ("Walsh"; collectively, "Defendants").  (*See* Third Am. Compl. ("TAC") 6–7

(Dkt. No. 81).)  Before the Court is Defendants' Motion for Summary Judgment limited to the

question of Plaintiff's exhaustion of administrative remedies.  (*See* Not. of Mot. (Dkt. No. 165).)

For the reasons discussed below, Defendants' Motion is granted.

<u>I.  Background</u>

<u>A.  Factual Background</u>

The following facts and procedural history are taken from the Parties' statements

pursuant to Local Civil Rule 56.1, specifically Defendants' 56.1 Statement, (Defs.' Local Rule

56.1 Statement ("Defs.' 56.1") (Dkt. No. 168)), and the admissible evidence submitted by the

Parties.[1]  The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

*Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quotation marks omitted).

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quotation marks omitted) (citation omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (adopting the same rule).

"'Pro se litigants are not excused from meeting the requirements of Local Rule 56.1,' and '[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.'" *Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) (quoting *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021); then quoting *T.Y.*, 584 F.3d at 418); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (adopting the same rule).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" to decide the instant Motion on its merits, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Thomas*, 2021 WL 5746207, at *1 n.1 (collecting cases); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1 [statement]."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special

### 1.  Plaintiff's Injury

Plaintiff is an incarcerated individual in DOCCS custody.  (Defs.' 56.1 ¶ 1.)  Plaintiff was transferred into and incarcerated at Green Haven in "approximately 2016 or 2017."  (*Id.* ¶ 12.) "When Plaintiff arrived at Green Haven, he attended an orientation, and received an orientation handbook," which "included a section on the Inmate Grievance Resolution Committee ["IGRC"] at Green Haven that covered the grievance process at that facility."  (*Id.* ¶¶ 13, 14.)

On September 22, 2017, Plaintiff underwent hip replacement surgery.  (Decl. of Brendan M. Horan, Esq., in Supp. of Mot. ("Horan Decl.") (Dkt. No. 167) Ex. 2 ("Pl. Depo. Tr.") 61:16– 17 (Dkt. No. 167-2).)  "From approximately September 26, 2017, to October 30, 2017, Plaintiff was confined to the Green Haven infirmary while recovering from [the] surgery."  (Defs.' 56.1 ¶ 3.)  Plaintiff was released from his infirmary confinement on October 30, 2017.  (*Id.* ¶ 4.)  "On or about November 5, 2017, Plaintiff learned that he had developed a methicillin-resistant Staphylococcus aureus ('MRSA') infection."  (*Id.* ¶ 5.)

### 2.  Administrative Remedies and Plaintiff's Use Thereof

DOCCS's system of administrative remedies is called the Inmate Grievance Program ("IGP").  (*Id.* ¶ 6.)  "The IGP policies and procedures are set forth in 7 [N.Y. Comp. Codes R. & Regs. ('NYCRR')] § 701.1 et seq."  (*Id.* ¶ 7 (underline omitted).)  "These regulations are mirrored with minor refinements in Directive #4040" (the "Directive").  (*Id.*)  In other words, the

---

solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citation and italics omitted)); *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of [the] [p]laintiff's pro se status, the [c]ourt overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").

Directive, like the NYCRR, "describes what issues are grievable through the IGP and what issues are non-grievable." (*Id.* ¶ 9.) The Directive "is available to incarcerated individuals in the Law Library and grievance office at every DOCCS correctional facility." (*Id.* ¶ 8.) "Issues with medical care by medical providers acting as DOCCS employees are grievable under the IGP." (*Id.* ¶ 10.) Additionally, the Directive "states that if an individual 'is unsure whether an issue is grievable, he or she should file a grievance, and the question will be decided through the grievance process . . .'" (*Id.* ¶ 11 (quoting 7 NYCRR § 701.3(e)).)

"On or about February 24, 2017, a grievance filed by Plaintiff under the IGP was received describing an issue with the Division of Health Services related to a special nutritional diet Plaintiff requested." (*Id.* ¶ 15.) "Plaintiff's issue regarding the special diet was resolved after Plaintiff filed the grievance through the IGP." (*Id.* ¶ 16.)

"On or about April 26, 2017, a grievance filed by Plaintiff under the IGP was received describing an issue with the Division of Health Services related to physical therapy that Plaintiff had requested." (*Id.* ¶ 17.) Again, this issue "was resolved after Plaintiff filed the grievance through the IGP." (*Id.* ¶ 18.)

In 2017 and 2019, Plaintiff filed additional grievances regarding a threat by an unnamed officer, an altercation with other incarcerated individuals, improper commissary charges, and keeplock confinement. (*See id.* ¶¶ 19–22.)

With respect to Plaintiff's above-mentioned medical issues surrounding his MRSA infection, "Plaintiff never filed or exhausted a grievance th[r]ough the IGP regarding or referencing any issue with medical care by medical providers acting as DOCCS employees with respect to the treatment of a surgical wound while in the infirmary at Green Haven Correctional Facility in September and October of 2017." (*Id.* ¶ 23.)

B.  Procedural History

Plaintiff filed his initial Complaint on June 12, 2019.  (Dkt. No. 1.)  The Court granted

Plaintiff in forma pauperis ("IFP") status on September 9, 2019.  (Dkt. No. 11.)  Plaintiff filed an

Amended Complaint on October 18, 2019.  (Dkt. No. 15.)  On November 25, 2019, Plaintiff

filed his Second Amended Complaint.  (Dkt. No. 27.)  On June 9, 2020, Plaintiff filed the TAC.

(Dkt. No. 81.)  Defendants filed a motion to dismiss and supporting papers on August 31, 2020.

(*See* Dkt. Nos. 103–106.)  Plaintiff filed an opposition thereto on September 9, 2020, (Dkt. No.

109), and filed supplemental papers on September 29 and October 1, 2020, (Dkt. Nos. 112–13).

Defendants filed their reply on October 15, 2020.  (Dkt. No. 115.)

On February 19, 2021, Plaintiff filed a motion for an order to show cause.  (Dkt. No.

125.)  On March 3, 2021, Defendants filed a letter explaining that, in order to fully rebut

Plaintiff's putative motion for an order to show cause, Defendants needed access to Plaintiff's

medical records, therefore requesting the Court issue an order compelling DOCCS to release

Plaintiff's health records to Defendants and to the Court.  (Dkt. No. 127.)

While both the Motion to Dismiss and the Motion for an Order to Show Cause were

pending, Plaintiff moved for default against Walsh on May 21, 2021, asserting that she had failed

to respond to the TAC.  (Dkt. No. 130.)  Defendants responded via letter on May 27, 2021.  (Dkt.

No. 132.)  The Court denied Plaintiff's default application "as Nurse Walsh has not yet been

served, th[r]ough no fault of her own."  (Dkt. No. 133.)  On June 15, 2021, Plaintiff filed a

Notice of Appeal to the Second Circuit Court of Appeals regarding the Court's denial of the

default application.  (Dkt. No. 138.)

On September 24, 2021, the Court issued an Opinion & Order converting Defendants'

Motion to Dismiss into a motion for summary judgment and denying it as well as denying

Plaintiff's Motion for an Order to Show Cause.  (*See generally* Op. & Order ("Op.") (Dkt. No. 140).)  The Court ordered the Parties "to complete limited discovery, solely on the issue of administrative exhaustion, within 60 days" and permitted Defendants to "file a motion for summary judgment [on this issue] following the close of this limited discovery."  (*Id.* at 31.)

On October 5, 2021, Plaintiff wrote a letter stating that a since-retired corrections officer, Mr. Lazerson, advised Plaintiff that "contraction of MERSA [sic] was not grievable" and purportedly threatened that Plaintiff would die in the facility if he filed a grievance about MRSA. (Letter from Plaintiff to Court (Oct. 5, 2021) ("Oct. 5, 2021 Letter") 1 (Dkt. No. 143).)[2]  Several days later, another letter from Plaintiff was filed saying that there has been a recurrence of MRSA at the facility.  (Dkt. No. 144.)  On November 4, 2021, yet another letter was filed from Plaintiff containing grievance documents.  (Dkt. No. 146.)

On November 22, 2021, Defendants filed a letter motion allowing Defendants to depose Plaintiff notwithstanding his status as an incarcerated individual.  (Dkt. No. 151.)  The Court granted this request the following day.  (Dkt. No. 152.)  On November 30, 2021, Plaintiff filed his response to Defendants' first set of interrogatories as well as his reply to Defendants' request for production of documents.  (Dkt. Nos. 154, 155.)

In parallel to his pending appeal, Plaintiff moved for reconsideration of the Court's denial of the default application on January 4, 2022.  (Dkt. No. 156.)  In response, Defendants filed a memorandum of law in opposition as well as a supporting declaration.  (Dkt. Nos. 157, 158.) Plaintiff seemingly filed a letter reply on February 7, 2022.  (Dkt. No. 164.)  Ten days later, the Second Circuit denied Plaintiff's appeal via mandate, having "determined sua sponte that it lacks jurisdiction over this appeal because a final order has not been issued by the district court."

---

[2] This letter was filed on October 13, 2021.  (*See* Dkt. No. 143.)

(Dkt. No. 174.)  This Court thereafter denied Plaintiff's Motion for Reconsideration on June 24, 2022.  (Dkt. No. 184.)

Defendants filed the instant Motion along with supplemental papers on February 14, 2022.  (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 166); Horan Decl.; Defs.' 56.1; Defs.' Local Rule 56.2 Not. (Dkt. No. 169).)  Plaintiff filed his Opposition on February 25, 2022.  (Pl.'s Mem. of Law in Opp. of Mot. ("Pl.'s Mem.") (Dkt. No. 175).)  Defendants filed their Response on Apr. 13, 2022.  (*See* Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 180); Decl. of Rachael Seguin in Supp. of Mot. (Dkt. No. 181).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion, [a non-movant need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . . ").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24). However, a

district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

### B.  Analysis

Defendants move for summary judgment on the limited basis of Plaintiff's failure to exhaust his administrative remedies in the form of an inmate grievance as dictated by New York state law.  (*See generally* Defs.' Mem.; Defs.' Reply Mem.)  Plaintiff, construed broadly, argues that this requirement is obviated because such remedies were unavailable to him.  (*See generally* Pl.'s Mem.)

### 1.  Exhaustion Requirements Under the PLRA

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so *properly* . . . .  Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules."  *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (alterations, citations, and quotation marks omitted) (emphasis in original).

To satisfy their exhaustion requirements, prisoners "must exhaust all levels" of DOCCS's IGP.  *Little v. Mun. Corp., City of New York*, No. 12-CV-5851, 2017 WL 1184326, at *11

(S.D.N.Y. Mar. 29, 2017).  The IGP provides for a three-step grievance process.  *See* 7 N.Y.C.R.R. § 701 *et seq.*; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))).  Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence.  *See* 7 N.Y.C.R.R. § 701.5(a)(1).  Once filed, the representatives of the Inmate Grievance Resolution Committee ("IGRC") have up to 16 calendar days to resolve the grievance informally.  *Id.* § 701.5(b)(1).  If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii).  The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the IGRC's written response, although the appealing party can seek an exception to the time limit.  *See id.* § 701.5(c)(1).  The third and final step is to appeal the superintendent's decision to the Central Office Review Committee ("CORC"), which the prisoner must do within seven days of the superintendent's written response to the grievance.  *Id.* § 701.5(d)(1)(i).  Here, too, an inmate may request an exception to the time limit.  *See id.*  Given the aforementioned requirement to exhaust all levels of administrative remedies, *see Little*, 2017 WL 1184326, at *11, "only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted," *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

The PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578

U.S. at 642.  As the Supreme Court has explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of
> administrative remedies: An inmate, that is, must exhaust available remedies, but
> need not exhaust unavailable ones.  And that limitation on an inmate's duty to
> exhaust . . . has real content. . . .  [A]n inmate is required to exhaust those, but only
> those, grievance procedures that are "capable of use" to obtain "some relief for the
> action complained of."

*Id.* (quoting *Booth*, 532 U.S. at 738).

The Supreme Court has identified at least "three kinds of circumstances in which an

administrative remedy, although officially on the books, is not capable of use to obtain relief."

*Id.* at 643.  First, an "administrative procedure is unavailable when . . . it operates as a simple

dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief,

but no ordinary prisoner can discern or navigate it."  *Id.* at 643–44.  Third, an administrative

remedy may be unavailable "when prison administrators thwart inmates from taking advantage

of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 644.  The

Second Circuit has noted "that the three circumstances discussed in *Ross* do not appear to be

exhaustive," but has declined to "opine on what other circumstances might render an otherwise

available administrative remedy actually incapable of use."  *Williams*, 829 F.3d at 123 n.2.

Nonetheless, these three circumstances "guide the Court's inquiry."  *Khudan v. Lee*, No. 12-CV-

8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

### 2.  Administrative Availability & Plaintiff's Nonexhaustion

Plaintiff contends in his pleadings and in his deposition that administrative remedies were

unavailable for three separate reasons: (1) his medical issue was non-grievable; (2) the IGP was

functionally unavailable as ineffective or a dead end; and (3) a prison official threatened him against filing a grievance. (*See generally* TAC; Pl. Depo. Tr.; Horan Decl. Ex. 3 (Decl. of Rachael Seguin) ("Seguin Decl."), at 4.) Defendants argue that, with the benefit of a full record, no genuine issue of material fact exists as to whether administrative remedies were available to Plaintiff, offering detailed arguments as to each of Plaintiff's theories. (*See generally* Defs.' Mem. 7–15.) Construed liberally, Plaintiff cursorily disputes some of Defendants' arguments regarding the availability of the grievance process. (*See generally* Pl.'s Mem.; *see also* Defs.' Reply Mem. 1.) More specifically, Plaintiff does not actually grapple with the textual arguments put forward as to whether Plaintiff's condition was grievable under New York law, nor does Plaintiff discuss whether his filing of other grievances undermines his unavailability argument. Plaintiff also does not explicitly identify any threats in TAC or Opposition. However, given the Court's awareness of Plaintiff's grievance regarding this alleged threat, (*see* Seguin Decl. Ex. C), because Plaintiff discussed it during his deposition, (*see* Pl. Depo. Tr. 85:24–86:7), and because Defendants address this specific argument, (*see* Defs.' Mem. 11–13), the Court considers this theory as having been adopted by Plaintiff. Defendants therefore ask the Court to consider Plaintiff's claims abandoned. (*See generally* Defs.' Reply Mem.) "However, because claims brought by pro se plaintiffs are construed liberally and held to less stringent standards than those brought by counsel, the Court will nonetheless address the merits of the motion below." *Deandrade v. United States*, Nos. 07-CR-12, 11-CV-3233, 2015 WL 9700275, at *2 (S.D.N.Y. Dec. 17, 2015) (collecting cases).

### a.  Grievability

Plaintiff argues that a genuine issue of fact exists as to whether Plaintiff's medical condition and treatment was "ungrievable" under applicable IGP procedures. (Pl.'s Mem. 9.)

The Court has already concluded otherwise.  (*See* Op. 24–25 (concluding that "medical issues are not included in the list of non-grievable issues set forth in DOCCS Directive 4040, which outlines the IGP's policies and procedures" and collecting cases holding similarly)); *see also Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (noting that the phrase "conditions of confinement" has a plain meaning, which "encompasses all conditions under which a prisoner is confined," including "deprivation of . . . medical care"); *Ritter v. Montoya*, No. 20-CV-114, 2021 WL 230205, at *2 (S.D.N.Y. Jan. 22, 2021) ("Specifically, the PLRA's exhaustion requirement applies to suits alleging inadequate medical treatment.").  In the face of this authority, Plaintiff cites no legal basis, nor has the Court found one, to conclude that he was precluded, as a matter of law, to grieve his medical conditions.  Moreover, the law of the case doctrine, which "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons," *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013) (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)), further militates in favor of reaffirming this conclusion.

Beyond the misinterpreted reading of the Directive, Plaintiff seemingly has one additional response to Defendants' arguments regarding the grievability of his injury: in earlier correspondence with the Court, he states that he was advised by a corrections officer that the issue was ungrievable.  (Oct. 5, 2021 Letter 1.)  Notably, Plaintiff did not re-assert this in his deposition.  (*See* Pl. Depo. Tr. 109:19–112:3 (stating that he did not file a grievance because of the threat and because it was not grievable, while declining to note that any official advised him that it was ungrievable).)  However, even if an officer were to have muddied the waters as to the grievability of this specific issue, the Directive affirmatively "states that if an individual 'is unsure whether an issue is grievable, he or she should file a grievance, and the question will be

decided through the grievance process . . .'"  (Defs.' 56.1 ¶ 11 (quoting Seguin Decl. Ex. 1).)

Plaintiff ignored this directive, thus further undermining his claim.

In sum, given the Court's prior reasoning, the law of the case doctrine, and the absence of

any legal authority for Plaintiff's interpretation of the grievance process, the Court reiterates its

legal determination that the underlying concern was in fact grievable; accordingly, no genuine

issue of material fact exists regarding whether Plaintiff's medical issues were grievable under

DOCCS's framework.

### b.  Ineffective or Dead-End Grievance Process

Plaintiff's second theory is that the grievance process was unavailable to him because the

IGP functioned as a dead end.  (*See* Pl.'s Mem. 9.)  The undisputed evidence on the record

proves otherwise.

That Plaintiff has already availed himself of the IGP by filing grievances—including

analogous ones—is the death knell of his contention.  Courts have repeatedly found that where a

plaintiff has filed parallel grievances, he cannot plausibly argue unavailability, as filing the prior

grievances "demonstrat[es] his familiarity with the procedures, as well as their availability."

*Powell v. Schriro*, No. 14-CV-6207, 2015 WL 7017516, at *8 (S.D.N.Y. Nov. 12, 2015).  And, as

discussed, Plaintiff has already filed several medical- and health-related grievances, (*see* Pl.

Depo. Tr. 101:5–109:4 (testifying regarding physical therapy and diet-related grievances

filed))—to a successful conclusion, no less, (*see* Defs.' 56.1 ¶¶ 16–22; *cf.* Pl. Depo. Tr. 53:17–

54:20 (testifying that Plaintiff has filed grievances, at least some of which have been successfully

addressed through the grievance process, and noting that just by filing a grievance, the issue at

hand gets raised, prompting action that can moot the grievance)).[3]  Thus, Plaintiff's argument as

to unavailability on these grounds is meritless.  *See Powell*, 2015 WL 7017516, at *8–9 (granting

summary judgment for the defendants based on the plaintiff's failure to exhaust his

administrative remedies in light of the availability of such remedies); *see also Grafton v. Hesse*,

783 F. App'x 29, 31 (2d Cir. 2019) (summary order) ("The evidence [the incarcerated plaintiff]

does provide—several of his past grievances containing the notation 'Grievance Accepted'—

undermines his argument that prison staff had made the prison grievance system a dead end by

not collecting and processing grievances as required."); *Williams v. Sposato*, No. 13-CV-4247,

2019 WL 5310222, at *8–9 (E.D.N.Y. Oct. 21, 2019) (granting summary judgment for the

defendants because the grievance system was not a dead end where record evidence indicated

that the plaintiff "either received the relief he sought, or other appropriate relief which he

accepted, for . . . four . . . grievances"); *accord Scott v. Greene*, No. 20-CV-1904, 2022 WL

903293, at *9 (D. Conn. Mar. 28, 2022) ("The Court also notes that [the] [p]laintiff had used the

grievance process at least nine times in relation to other issues prior to initiating this lawsuit,

---

[3] Indeed, this fact further reinforces the Court's holding that such issues were grievable. *See Smith v. Jaynes*, No. 18-CV-1107, 2022 WL 686627, at *3 (N.D.N.Y. Feb. 18, 2022) ("[A plaintiff's prior filing of grievances regarding parallel conduct] shows that [the] [p]laintiff did not view the filing of grievances as a dead end.  It *also* demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the *first two exceptions* identified under *Ross* are not applicable here."  (emphases added) (quoting *Walker v. Ball*, No. 16-CV-437, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018))), *report and recommendation adopted*, 2022 WL 685488 (N.D.N.Y. Mar. 8, 2022); *see also Conklin v. Bowen*, No. 12-CV-1478, 2014 WL 4063294, at *4 (N.D.N.Y. Aug. 14, 2014) ("Despite [the] [p]laintiff's mistaken understanding of the law, the CORC computer print outs show that [the] [p]laintiff had previously appealed grievances concerning alleged retaliatory and *similar conduct* prior to commencement of this action, thereby demonstrating that [the] [p]laintiff generally knew that he was required to exhaust his administrative remedies prior to filing suit." (emphasis added))

supporting [the] [d]efendants' assertion that the grievance process was not 'unavailable' to [the] [p]laintiff." (citations omitted)).

Plaintiff seemingly implies that, despite having filed grievances previously, the grievance process was nevertheless unavailable because of how long such grievances take. In his deposition, when asked about the differences in grievance filings from years prior to today, Plaintiff lamented the time it takes today to see a grievance through: "No one is going by timeliness, no one. From the superintendent's time to respond to the C.O.R.C. time to respond all the way back down to having the actual grievance hearing itself. No one is paying attention to timeliness." (Pl. Depo. Tr. 38:15–19.) Just beginning the process, Plaintiff also testified, incurs significant delays: "It might take you a week, it might take a month before you get a number." (*Id.* at 37:12–14.) And when asked if he had ever sought the help of an inmate grievance representative to file a grievance, Plaintiff returned to this issue: "I don't file grievances anymore. It doesn't make sense. If I file a grievance, nobody is going by . . . If I file a grievance this month, it might not get heard until two months later." (*Id.* at 45:18–22 (ellipses in original).) To illustrate this point, Plaintiff, in a letter he wrote to the Court, attached the grievance he filed regarding the threat and highlighted in the letter the fact that it "[t]ook 'two years to reach a CORC denial.'" (Letter from Plaintiff to Court (Nov. 2, 2021) 3 (Dkt. No. 146); *see also id.* at 4 (showing the eighteen-month difference between the date filed and the hearing date on the CORC appeal paperwork).)

But frustration regarding delays in the grievance process—and prospective, self-imposed frustration at that—does not relieve an inmate of his exhaustion requirement. *See Galberth v. Washington*, No. 14-CV-691, 2017 WL 3278921, at *10 (S.D.N.Y. July 31, 2017) (collecting cases to support the conclusion that "[w]here courts have been presented with inward-looking

justifications for a failure to exhaust, which are based in a prisoner's subjective sense of what was available, such justifications have been rejected"), *aff'd*, 743 F. App'x 479 (2d Cir. 2018); *see also Briscoe v. D'Agata*, No. 14-CV-7384, 2016 WL 3582121, at *7 (S.D.N.Y. June 28, 2016) (concluding that prison's grievance procedure was "available" despite the plaintiff's assertion that he did not know about it because "[t]he availability of administrative remedies is adjudged not by whether the [p]laintiff was unaware of them, but instead by whether 'a similarly situated individual of ordinary firmness' would have deemed them available" (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004))); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) ("[The][p]laintiffs' perception that the Green Haven grievance program was ineffective or that the filing of grievances was futile is insufficient to negate the PLRA's exhaustion requirement."); *Harrison v. Goord*, No. 07-CV-1806, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) ("Prisoners are required to exhaust their administrative remedies even if they believe that administrative remedies would be ineffective or futile." (citation and quotation marks omitted)).  Thus, "Plaintiff's decision not to diligently pursue a grievance," even if it would take a significant amount of time, does not "prevent Defendants from shielding themselves with his failure to exhaust his administrative remedies."  *Wing v. Myers*, No. 18-CV-11056, 2022 WL 507425, at *7 (S.D.N.Y. Feb. 18, 2022).

Ultimately, the Court finds that there exists no dispute that the grievance process was available to Plaintiff in light of his filing prior grievances as well as his self-imposed decision against filing a grievance for sake of speculative delay.  *See Sposato*, 2019 WL 5310222, at *8 (granting summary judgment for sake of a plaintiff's failure to exhaust administrative remedies where, *inter alia*, "the record evidence indicate[d] that [the plaintiff] was able to obtain grievance

forms, file grievances and obtain the relief he sought" on analogous issues to the incident
complained of in the § 1983 action).

<u>c.  Threat of Reprisal</u>

Plaintiff's final theory of unavailability concerns a threat allegedly made by a prison
official.  Specifically, Plaintiff testified that a corrections officer told him: "Hall, if you write any
more grievances about this hospital, you're liable to die here."  (Pl. Depo. Tr. 84:15–17.)
Plaintiff later identified the individual that made this remark as Corrections Officer Lazerson
("Lazerson") (*id.* at 87:14–25), while the two were in an elevator together on November 29,
2017, (*id.* at 86:22–87:4; Seguin Decl. Ex. C, at 3–4).[4]

It is well settled that a plaintiff's "generalized fear" of retaliation "is insufficient to
excuse his failure" to file a grievance.  *Little*, 2017 WL 1184326, at *12 (collecting cases); *see
also Massey v. City of New York*, No. 20-CV-5665, 2021 WL 4943564, at *9 (S.D.N.Y. Aug. 30,
2021) (citing *Little* for the same proposition), *report and recommendation adopted*, 2021 WL
4459459 (S.D.N.Y. Sept. 29, 2021), *aff'd*, 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021); *Wing v.
Myers*, No. 18-CV-11056, 2019 WL 6732967, at *5 (S.D.N.Y. Dec. 11, 2019) (citing *Little* and
collecting additional cases for this proposition); *Grafton v. Hesse*, No. 15-CV-4790, 2017 WL
9487092, at *7 n.9 (E.D.N.Y. Aug. 25, 2017) (same), *report and recommendation adopted sub
nom. Grafton v. Asst. Deputy Undersheriff Hesse*, 2017 WL 4286266 (E.D.N.Y. Sept. 27, 2017),
*aff'd Grafton*, 783 F. App'x 29.  However, Plaintiff articulates a more specific fear, offering
some details as to who made the purported threat and the circumstances under which it was
made.  *Cf. Khudan*, 2016 WL 4735364, at *6 (finding, at the summary judgment stage after a

---

[4] Plaintiff did not provide a first name for Lazerson.  Accordingly, the Court refers to him
only by his last name.

period of limited discovery on exhaustion, that the plaintiff insufficiently alleged the unavailability of administrative remedies because he "fail[ed] to specify the dates of any threats, the names of any officers who threatened him, and the locations in [the facility] where these alleged threats took place"); *Atkinson v. Huntington*, No. 15-CV-65, 2016 WL 8735651, at *6 (N.D.N.Y. Aug. 19, 2016) ("The record lacks any facts related to the alleged threats by [the defendant officer] including where, when, and how many times [the defendant officer] allegedly threatened [the] [p]laintiff."), *report and recommendation adopted*, 2016 WL 4991616 (N.D.N.Y. Sept. 19, 2016).

The Second Circuit has made clear that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill*, 380 F.3d at 688 (quotation marks omitted); *cf. Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (articulating the same "individual of ordinary firmness" standard in the context of a prisoner retaliation claim). Accordingly, the Court must consider objectively whether the officer's words were in fact threatening.

First, the remark itself is not clearly a threat. A straightforward reading of the comment suggests that Lazerson is offering his (concededly unrequested) commentary, including referencing Plaintiff's advanced age in light of the time-intensive nature of grievances to which Plaintiff himself has alluded. Indeed, Plaintiff used this very word multiple times throughout his deposition in such an advisory and non-threatening fashion. (*See, e.g.*, Pl. Depo. Tr. 39:17–20 ("You're supposed to be able to talk to your grievance rep. But today, in this pursuit, that's not happening, because your grievance rep is *liable* not to know." (emphasis added)).) Plaintiff

himself even conceded in his deposition that "[m]aybe he [Lazerson] was joking." (*Id.* at 86:3–4.)

Additionally, though the Court is unaware of specific guidance from the Second Circuit as to what, exactly, defines a threat in this context, "[e]xamples elsewhere serve as useful highwater marks." *Dominick R. Pilla, Architecture-Eng'g P.C. v. Gilat*, No. 19-CV-2255, 2022 WL 1003852, at *29 (S.D.N.Y. Mar. 29, 2022). On a motion to dismiss, this Court found in another case that a correction officer's warning to an inmate that her relative is in prison "so file your grievance if you want and see what happens to your white ass" qualified as a threat. *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *15 (S.D.N.Y. Dec. 21, 2018). In another case in a sister district, an incarcerated individual was specifically threatened that he "would be killed" for filing a grievance. *Daum v. Doe*, No. 13-CV-88, 2016 WL 11481727, at *5 (W.D.N.Y. Apr. 21, 2016), *report and recommendation adopted*, 2016 WL 3411558 (W.D.N.Y. June 22, 2016). Lacking what appears to be malicious intent—"you're liable" as compared to "and see what happens"—or reference to a specific, overt act—"to die" is passive, contrary to the active threat of "be[ing] killed"—this remark does not reach the same heights. Moreover, it should also be noted that, "[w]hile all reasonable inferences are drawn in favor of the non-moving party, courts in the Second Circuit have reviewed claims of retaliation by prisoners 'with skepticism' because of the 'ease with which a retaliation claim may be fabricated[.]'" *Winston v. Woodward*, No. 05-CV-3385, 2008 WL 2263191, at *8 (S.D.N.Y. May 30, 2008) (quoting *Nunez v. Goord*, 172 F. Supp. 2d 417, 431 (S.D.N.Y. 2001)).

Second, and arguably more important, is Plaintiff's subsequent filing of a grievance regarding this specific threat. During the same deposition where he described the alleged threat, Plaintiff also admitted to immediately filing a grievance concerning this *exact* threat as well as

reiterating his prior health-related grievances but omitting *any* reference to his having contracted MRSA.  (*See* Pl. Depo. Tr. 114:4–122:7; *see also* Seguin Decl. Ex. 3, at 4.)  But when asked why he did not raise the MRSA issue in the grievance he filed regarding this purportedly retaliatory comment, Plaintiff stated the following: "Well, I can't answer, I can't – I can't give you an answer on all that because you – you're bringing up something that, you know, I didn't see.  You know, I could have mentioned MRSA but I didn't because MRSA is not grievable.  I just mentioned the threat."  (Pl. Depo. Tr. 119:5–25; *see also id.* at 122:2–9 ("[Y]ou could have included it, . . . and you chose not to include that at that time?"; "True. … That's the fact, yes …" (second ellipsis in original)).)  Yet, "[w]here an inmate files a grievance or appeals a grievance determination after having received threats or suffered retaliation, the inmate's conduct 'directly cuts against' . . . [an] argument that . . . administrative remedies were unavailable." *Aikens v. Jones*, No. 12-CV-1023, 2015 WL 1262158, at *6 (S.D.N.Y. Mar. 19, 2015) (alterations in original) (quoting *Winston*, 2008 WL 2263191, at *8); *see also McNab v. Doe*, 686 F. App'x 49, 51 (2d Cir. 2019) (summary order) (affirming summary judgment dismissing the plaintiff's complaint for failure to exhaust where although the plaintiff asserted that the defendants tried to intimidate him, "none of the actions allegedly taken by the defendants actually prevented [him] from submitting his complaint letter."); *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (summary order) (finding that the defendants' alleged threats of retaliation did not interfere with the plaintiff's exhaustion efforts because, following a threat, the plaintiff "thereafter submitted . . . [a] grievance in spite of this alleged threat"); *Peters v. Huttel*, No. 15-CV-9274, 2019 WL 6619602, at *12 (S.D.N.Y. Dec. 5, 2019) (granting summary judgment for defendants regarding the exhaustion of administrative remedies because, inter alia, "the evidence establishes that [the] [p]laintiff continued to participate in the grievance process—which ultimately involved [the]

[d]efendant [accused of retaliating against the plaintiff]—for other issues [the plaintiff] had at Green Haven, including *while the alleged retaliatory conduct was ongoing*" (emphasis in original)); *Mateo v. Ercole*, No. 08-CV-10450, 2010 WL 3629520, at *4 (S.D.N.Y. 2010) ("[A]lthough [the plaintiff] purports to have been too fearful to exhaust his remedies, he actually filed grievances regarding the September incidents[;] . . . [s]uch action is inconsistent with an assertion that fear rendered the grievance process unavailable to [the plaintiff] let alone to one of 'ordinary firmness'"); *Winston*, 2008 WL 2263191, at *8 (rejecting an inmate's allegations that the defendants' "threats and retaliation" rendered administrative remedies "functionally unavailable to him" where the inmate utilized the inmate grievance procedure to file an appeal). This principle—that the grievance process is considered available to an inmate notwithstanding a threat where the inmate filed grievances *after* said threats—has even been upheld where "the record is replete with allegations of repeated threats and intimidation." *Heyliger v. Trombley*, No. 14-CV-603, 2016 WL 11480156, at *8 (N.D.N.Y. June 9, 2016), *report and recommendation adopted*, 2016 WL 4029346 (N.D.N.Y. July 27, 2016).

In sum, considering the relatively innocuous language of the comment Plaintiff would have the Court believe is a threat as well as Plaintiff's subsequent grievance filings, there "is insufficient [evidence] to create a *genuine* dispute of fact" regarding the availability of the grievance to Plaintiff notwithstanding Lazerson's remark. *Khudan*, 2016 WL 4735364, at *5 (emphasis in original); *see McNab*, 686 F. App'x at 51 (affirming summary judgment dismissing the plaintiff's complaint for failure to exhaust where although the plaintiff asserted that the defendants tried to intimidate him, "none of the actions allegedly taken by the defendants actually prevented [him] from submitting his complaint letter."); *Riles*, 656 F. App'x at 581 (finding that the defendants' alleged threats of retaliation did not interfere with the plaintiff's

exhaustion efforts because, following a threat, the plaintiff "thereafter submitted . . . [a] grievance in spite of this alleged threat"); *Aikens*, 2015 WL 1262158, at *6 ("Where an inmate files a grievance or appeals a grievance determination after having received threats or suffered retaliation, the inmate's conduct 'directly cuts against' . . . [an] argument that . . . administrative remedies were unavailable."); *Mateo*, 2010 WL 3629520, at *4 ("[A]lthough [the plaintiff] purports to have been too fearful to exhaust his remedies, he actually filed grievances regarding the September incidents[;] . . . [s]uch action is inconsistent with an assertion that fear rendered the grievance process unavailable to [the plaintiff] let alone to one of 'ordinary firmness'").

### III.  Conclusion

For the reasons stated above, Defendants' Motion is granted.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 165), mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket, enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:    August 30, 2022
          White Plains, New York

                                    _____
                                         KENNETH M. KARAS
                                        United States District Judge